UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
GLORIA E. JONES-KAHN,

                        Plaintiff,

                                              MEMORANDUM & ORDER
            -against-                         13-CV-7144(JS)(GRB)

WESTBURY BOARD OF EDUCATION-WESTBURY
UNION FREE SCHOOL DISTRICT and DAVID
ZIMBLER

                        Defendants.
--------------------------------------X
APPEARANCES
For Plaintiff:        Chauncey D. Henry, Esq.
                      Jade Lacey Morrison, Esq.
                      Henry Law
                      825 East Gate Boulevard, Suite 106
                      Garden City, NY 11530

For Defendants:       Adam I. Kleinberg, Esq.
                      Melissa Lauren Holtzer, Esq.
                      Sokoloff Stern LLP
                      179 Westbury Avenue
                      Carle Place, NY 11514

SEYBERT, District Judge:

        Plaintiff Gloria E. Jones-Kahn ("Plaintiff") commenced this employment discrimination action on December 12, 2013 against the Westbury Board of Education-Westbury Union Free School District (the "District"), and the principal of Westbury Middle School, David Zimbler ("Zimbler," and together with the District, "Defendants"). The Amended Complaint asserts the following claims: (1) disparate treatment and failure to promote based on race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; (2) disparate treatment

and failure to promote based on age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; (3) retaliatory discharge in violation of Title VII; (4) discrimination based on age and race, in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and (5) breach of contract under New York state law.[1] Defendants move to dismiss the following claims: (1) retaliatory discharge and failure to promote under Title VII and the ADEA; (2) discrimination under the NYSHRL; (3) breach of contract; and (4) all federal claims against Zimbler. (Docket Entry 16.) For the following reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

BACKGROUND

I.  Factual Background[2]

     Plaintiff is a sixty-fix-year-old, African-American female. (Am. Compl., Docket Entry 15, ¶ 8.) On September 1, 2008, Plaintiff received a "provisional Public School Teacher Certificate," which was valid for five years and permitted her to

---

[1] Defendants moved to dismiss Plaintiff's original Complaint on March 27, 2014. (Docket Entry 11.) In response, Plaintiff filed the Amended Complaint on May 14, 2014. (Docket Entry 15.) Accordingly, Defendants' motion to dismiss the original Complaint is DENIED AS MOOT.

[2] The following facts are taken from the Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

work as a substitute teacher in New York State public schools. (Am. Compl. ¶¶ 18-19.)  In 2010, the District hired Plaintiff as a permanent substitute teacher at Westbury Middle School.  (Am. Compl. ¶ 24.)  The District was aware that Plaintiff held a "school attendance teacher certificate," and an employee of the District "informed [her] that based on her teaching certificate[,] she was qualified for the substitute teacher position."  (Am. Compl. ¶¶ 21-22.)

Sometime later that year, unidentified "members of the District's administration" asked Plaintiff to write a "negative reference letter" against the former school principal, Darnell Powell.[3]  (Am. Compl. ¶ 32.)  According to the Amended Complaint, Powell was "subject to disciplinary proceedings" and "a lawsuit" stemming from "allegations made against him by a [school] employee."  (Am. Compl. ¶ 31.)  The Amended Complaint additionally alleges that Powell "alleged a violation of his civil rights and/or was involved in a due process claim involving [the] Westbury School Board."  (Am. Compl. ¶ 31.)  Plaintiff refused the District's request that she write a letter against Powell, and instead, "aided [Powell] with his defense and/or claims against the [District]"

---

[3] The Amended Complaint does not specifically identify Powell by name, but there is no dispute that Plaintiff was referring to Powell and that he was the former principal.  (See Defs.' Br., Docket Entry 16-3, at 3.)

and "served as a strong advocate . . . in his plight to clear his name." (Am. Compl. ¶¶ 32-33.)

The District and Zimbler were aware of Plaintiff's support for Powell, because Plaintiff "openly discussed her support of [him] amongst her peers[,] including Defendant Zimbler." (Am. Compl. ¶¶ 34-35.) Plaintiff alleges that Zimbler made it clear that he did not want Plaintiff to support Powell. He allegedly told Plaintiff: "You are not dealing with [Powell]. You are dealing with me! This is my school!" (Am. Compl. ¶ 36.)

Later that year, Plaintiff proposed and the District implemented an in-school suspension program and a new permanent teaching position to monitor suspended students (the "In-School Suspension Position"). (Am. Compl. ¶¶ 38-39.) Plaintiff asked to be reassigned to the In-School Suspension Position since, according to Plaintiff, "she created the [in-school suspension] program, previously worked in the position as a substitute teacher, and was overly qualified for [the] position." (Am. Compl. ¶ 40.)

Plaintiff contends that the District terminated her shortly thereafter to avoid having to promote her to the In-School Suspension Position. She alleges that the District originally informed her that it no longer had a need for permanent substitute teachers and that she could apply for a per diem position instead. (Am. Compl. ¶ 41.) However, during a subsequent "administrative hearing involving [the District]" in August 2010, Plaintiff

allegedly "accessed" an "employment sheet" which "indicated" that the District terminated her and replaced her with a younger guidance counselor, Freddie Perez ("Perez").[4]  (Am. Compl. ¶ 45.) Plaintiff then called the Westbury Middle School administrative office for an explanation and informed the office that she would file a discrimination charge against the District "for its willful violation of employment laws."  (Am. Compl. ¶ 48.)  Two weeks later, the District rehired Plaintiff as a permanent substitute teacher.  (Am. Compl. ¶ 49.)

Approximately two-and-a-half years later, on February 14, 2013, Zimbler held a "closed[-]door meeting" with Plaintiff and "several other administrators of Westbury Middle School."  (Am. Compl. ¶ 52.)  During the meeting, Zimbler accused Plaintiff of calling students "stupid and dumb."  (Am. Compl. ¶ 54.)  Plaintiff denied making "any inappropriate comments to students," but Zimbler "racially berate[d], harass[ed], ridicule[d] and further intimidate[d] Plaintiff for no legitimate reason whatsoever." (Am. Compl. ¶ 55.)  Plaintiff claims that Zimbler did not "treat[ ]" Plaintiff's "Caucasian counterparts" in the same manner.  (Am. Compl. ¶ 45.)  Zimbler also allegedly told Plaintiff that he had "dealt with [her] kind before."  (Am. Compl. ¶ 58.) Plaintiff contends that this was a reference to her "race, age,

---

[4] The Amended Complaint does not explain what the hearing was about or in what context it was held.

and status as a 60+ year-old African-American female." (Am. Compl.
¶ 58.) Plaintiff further alleges that on other unspecified
occasions, Zimbler "would racially berate, reprimand, disrespect,
and verbally attack [her]." (Am. Compl. ¶ 69.)

Plaintiff reported Zimbler's alleged discriminatory
conduct to Acting Assistant Principal Felicia Crawford
("Crawford"). (Am. Compl. ¶ 59.) In response, Crawford allegedly
told Plaintiff that "she could not worry about Plaintiff's issues
because she had herself to worry about," and that Zimbler "[did
not] want [Plaintiff] [there]." (Am. Compl. ¶¶ 60-61.) Plaintiff
claims that this was a reference to "Zimbler's discriminatory and
animus laden campaign against Plaintiff's employment at Westbury
Middle School." (Am. Compl. ¶ 60.) Plaintiff also complained to
the Westbury Board of Education, but the Board did nothing to
correct the alleged discriminatory conduct. (Am. Compl. ¶¶ 62-
66.)

On March 8, 2013, Plaintiff received a notice requiring
her to report to Eudes Budhai ("Budhai"), the Interim Assistant
Superintendent for Curriculum. (Am. Compl. ¶ 72.) After Plaintiff
reported to Budhai, he asked her what kind of teaching certificate
she had, to which Plaintiff responded, "the same one [she had]
been hired and re-hired on several times." (Am. Compl. ¶ 73.)
Budhai then informed Plaintiff that the District was terminating
her, but he suggested that she "look into per diem substitute

teaching positions or simply resign." (Am. Compl. ¶ 74.)
Plaintiff declined both options, and when she pressed Budhai for
the reason for her termination, Budhai told her that "the
certification she held was deemed no longer valid." (Am. Compl.
¶ 75.) However, Plaintiff claims that her teaching certification
was valid and that it "did not expire until on or about August 31,
2013." (Am. Compl. ¶ 76.) Two days later, Plaintiff discovered
that the District had assigned Perez to the In-School Suspension
Position that Plaintiff previously created and applied for in 2010.
(Am. Compl. ¶ 82.)

II.  Procedural Background

On May 16, 2013, Plaintiff, proceeding pro se, dual-
filed an administrative complaint against the District with the
New York State Division of Human Rights ("NYSDHR") and the Equal
Employment Opportunity Commission ("EEOC"), alleging
discrimination based on age, race, and sex. (Holtzer Decl., Docket
Entry 16-1, Ex. B.) On August 6, 2013, the NYSDHR dismissed
Plaintiff's complaint, finding that there was "no probable cause
to believe that [the District] ha[d] engaged in or is engaging in
the unlawful discriminatory practice complained of." (Holtzer
Decl. Ex. C at 41[5].) The NYSDHR specifically determined that the

_____

[5] The page numbers of exhibits referenced herein are those
generated by the Electronic Case Filing system.

District "terminated [Plaintiff] because she did not obtain the proper certification for her position." (Holtzer Decl. Ex. C at 41.) The EEOC subsequently adopted the NYSDHR's findings and issued a right-to-sue letter dated September 20, 2013. (Compl. Ex. A.)[6]

Plaintiff then commenced this action on December 12, 2013, alleging claims of: (1) disparate treatment and failure to promote based on race under Title VII; (2) disparate treatment and failure to promote based on age under the ADEA; (3) retaliatory discharge under Title VII; (4) discrimination based on age and race under the NYSHRL; and (5) breach of contract under New York state law. Defendants move to dismiss the following claims: (1) retaliatory discharge and failure to promote under Title VII and the ADEA; (2) discrimination under the NYSHRL; (3) breach of contract; and (4) all federal claims against Zimbler. (Docket

---

[6] Plaintiff did not attach her administrative complaint, the NYSDHR's decision, or the EEOC's right-to-sue letter to the Amended Complaint in this action. Nevertheless, the Court may properly consider these documents in deciding the instant motion to dismiss. See Morris v. David Lerner Assocs., 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010) ("[W]ith respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims."). Moreover, Defendants move to dismiss Plaintiff's NYSHRL claims in part based on lack of subject matter jurisdiction, and the Court may consider materials outside of the pleadings to resolve jurisdictional question. See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

Entry 16.)  Defendants' motion is currently pending before the Court.

DISCUSSION

The Court will first set forth the applicable legal standards before turning to Defendants' motion more specifically.

## I.  Legal Standards

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "The party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

### B.  Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007);

accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

II.  Title VII and ADEA Claims

    A.  Individual Liability Against Zimbler

        As a preliminary matter, Defendants correctly note that
individuals are not subject to liability under either Title VII or
the ADEA.  (Defs.' Br., Docket Entry 16-3, at 16); see Almontaser
v. N.Y. City Dep't of Educ., No. 13-CV-5621, 2014 WL 3110019, at
*3 (E.D.N.Y. July 8, 2014) ("[I]ndividuals are not subject to
liability under either Title VII or the ADEA." (citing Guerra v.
Jones, 421 F. App'x 15, 17 (2d Cir. 2011) (ADEA); Patterson v.
Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (Title VII))).
Accordingly, Plaintiff's Title VII and ADEA claims against Zimbler
are DISMISSED WITH PREJUDICE.  The Court will now turn to
Plaintiff's claims as against the District.

    B.  Timeliness/Failure to Exhaust Administrative Remedies

        Before commencing a lawsuit in federal court under Title
VII or the ADEA, a plaintiff must first file a timely charge with
the EEOC.  See McPherson v. N.Y. City Dep't of Educ., 457 F.3d
211, 213 (2d Cir. 2006); 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29
U.S.C. § 626(d)(1) (ADEA).  "Exhaustion of remedies is a
precondition to suit, and a plaintiff typically may raise in a
district court complaint only those claims that either were
included in or are reasonably related to the allegations contained
in her EEOC charge."  Holtz v. Rockefeller & Co., 258 F.3d 62, 82-
83 (2d Cir. 2001).  Under both Title VII and the ADEA, in states

such as New York, the EEOC charge must be filed within 300 days of the alleged discriminatory act. <u>See</u> 42 U.S.C. § 2000e-5(e)(1)); 29 U.S.C. § 626(d)(1); <u>see also</u> <u>Ford v. Bernard Fineson Dev. Ctr.</u>, 81 F.3d 304, 307 (2d Cir. 1996).[7]

This "statutory [filing] requirement is analogous to a statute of limitations." <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 712 (2d Cir. 1996). Thus, acts of discrimination that occurred outside of the 300-day limitations period are not actionable under Title VII or the ADEA. <u>Id.</u> ("[O]nly events that occurred during the 300-day period prior to filing . . . are actionable under Title VII."); <u>Saidin v. N.Y. City Dep't of Educ.</u>, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) (dismissing as time-barred all Title VII and ADEA claims that occurred more than 300 days before the plaintiff filed the relevant charge with the EEOC).

The District argues that Plaintiff's failure to promote and retaliatory discharge claims should be dismissed either

---

[7] Under the statutes, the EEOC charge "must ordinarily be 'filed' with the EEOC within 180 days of the date on which the 'alleged unlawful employment practice occurred.'" <u>Ford</u>, 81 F.3d at 307 (quoting 42 U.S.C. § 2000e-5(e)(1)); <u>see</u> 29 U.S.C. § 626(d)(1). "However, if the alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws, then the time period for 'fil[ing]' claims with the EEOC is extended to 300 days." <u>Ford</u>, 81 F.3d at 307 (alteration in original). Here, the alleged discriminatory acts occurred in New York, which has both antidiscrimination laws and an agency to enforce them. <u>Id.</u> Thus, the 300-day period applies.

because they occurred more than 300 days prior to the filing of Plaintiff's administrative complaint or because Plaintiff did not include those claims in her administrative complaint to the EEOC and her time to do so has now expired.[8] (Defs.' Br. at 6-8.) The Court agrees in part. As explained fully below, Plaintiff's failure to promote claim must be dismissed as time-barred, because the discriminatory conduct underpinning this claim occurred more than 300 days prior to the filing of Plaintiff's administrative complaint, and neither equitable tolling nor the "continuing violations" doctrine saves this claim from dismissal. Likewise, although Plaintiff's termination occurred within 300 days of her administrative complaint, her claim that the District terminated her for complaining about Zimbler's alleged discriminatory conduct in violation of Title VII fails nonetheless, because Plaintiff did not include this claim in her administrative complaint, nor is it reasonably related to the allegations contained therein. However, Plaintiff's claim that the District terminated her for supporting the former school principal with his "civil rights" claim against the Westbury Board of Education, although not explicitly asserted in Plaintiff's administrative complaint, survives the District's motion to dismiss, because the allegations of the administrative complaint were sufficient to put the EEOC on notice of this claim.

---

[8] The District does not seek dismissal of Plaintiff's "disparate treatment" claims under Title VII and the ADEA.

1. <u>Failure to Promote</u>

Plaintiff cross-filed her administrative complaint with the NYSDHR and the EEOC on May 16, 2013.[9] (Holtzer Decl. Ex. B.) Thus, by that time, the 300-day limitations period had already run on any discriminatory act that occurred before July 20, 2012--<u>i.e.,</u> 300 days prior to the filing of the administrative complaint. Plaintiff alleges that the District failed to promote her to the In-School Suspension Position in August 2010. This claim therefore falls well outside the 300-day limitations period. Plaintiff concedes that she discovered the District's decision not to promote her in August 2010, but she argues that her failure to promote claim is timely because: (1) the accrual of the 300-day limitations period should be equitably tolled until March 2013; and (2) the "continuing violations" doctrine saves her claim from dismissal. (<u>See</u> Pl.'s Opp. Br., Docket Entry 20, at 7-8.) Neither assertion saves her claim.

(a) <u>Equitable Tolling</u>

Plaintiff argues that the 300-day limitations period should be equitably tolled because she "did not learn of the discriminatory purpose behind" the District's decision not to

_____

[9] Complaints filed with the NYSDHR are automatically cross-filed with the EEOC pursuant to a work sharing agreement between the NYSDHR and the EEOC. <u>Rodriguez v. N.Y. City Dep't of Transp.</u>, No. 11-CV-3056, 2012 WL 4447101, at *1 n.3 (E.D.N.Y. Sept. 25, 2012).

promote her until she was terminated in March 2013. (Pl.'s Opp. Br. at 7.) Plaintiff claims that the District intentionally misled her regarding the In-School Suspension Position by informing her that it no longer needed permanent substitute teachers, when, in reality, the District hired Perez as a permanent substitute teacher and promoted him to the In-School Suspension Position instead of Plaintiff. It was not until she was terminated in March 2013, Plaintiff contends, that she discovered that the District gave the In-School Suspension Position to Perez, who was younger.

Plaintiff's allegations do not warrant equitable tolling. First, "[t]he law of accrual is 'concerned with a plaintiff's knowing that [s]he has suffered an injury, not with any other facts that might support h[er] cause of action.'" Lugo-Young v. Courier Network, Inc., No. 10-CV-3197, 2012 WL 847381, at *5 (E.D.N.Y. Mar. 13, 2012) (quoting Heins v. Potter, 271 F. Supp. 2d 545, 554 (S.D.N.Y. 2003)). Thus, "[a]n 'employee's awareness of a discriminatory motive has no bearing on the 300-day period.'" Id. at *7 (quoting Syrkin v. State Univ. of N.Y., No. 04-CV-4336, 2005 WL 2387819, at *8-9 (E.D.N.Y. Sept. 29, 2005)); accord Berry v. Jetblue Airways, No. 11-CV-1888, 2013 WL 249392, at *3 (E.D.N.Y. Jan. 23, 2013).

Second, it is true that equitable tolling may be available "where [the] plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant." Zerilli-

15

_Edelglass v. N.Y. City Transit Auth._, 333 F.3d 74, 80 (2d Cir. 2003). However, in order to avail herself of equitable tolling, Plaintiff must have "acted with reasonable diligence during the time period she seeks to have tolled" and must "prove[ ] that the circumstances are so extraordinary that the doctrine should apply." _Id._ (internal quotation marks and citation omitted); accord _Jackson v. Hanson_, No. 12-CV-0654, 2014 WL 787820, at *9 (S.D.N.Y. Feb. 25, 2014). Here, Plaintiff's own allegations foreclose the possibility of equitable tolling. Specifically, the Amended Complaint alleges that after Plaintiff learned that the District hired Perez as a permanent substitute teacher in August 2010, she called the administrative office of the Westbury Board of Education and threatened to "file a charge of discrimination against the District for its willful violation of employment laws." (Am. Compl. ¶ 48.) Thus, by Plaintiff's own admission, she was aware of a potential discriminatory motive behind the District's failure to promote her, and indeed, threatened to file a discrimination charge, as early as August 2010, but did not. In this situation, a person acting with reasonable diligence would not have then waited nearly three years to file an administrative complaint with the EEOC. Thus, equitable tolling does not apply.

(b) Continuing Violation

Plaintiff next argues that Zimbler subjected her to a hostile work environment until the day she was terminated, and

therefore, her failure to promote claim, even if untimely, is saved by the "continuing violation" doctrine. (Pl.'s Opp. Br. at 9-11.) The Court disagrees. Under the continuing violations doctrine, if a plaintiff "files an EEOC charge that is timely as to any incident of discrimination of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Walker v. City of N.Y., 11-CV-2941, 2014 WL 1244778, at *6 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks and citation omitted). However, as the Supreme Court held in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002), the continuing violations doctrine is inapplicable to discrete employment acts, such as a failure to promote. Rather, the doctrine is reserved for hostile work environment claims, which "cannot be said to occur on any particular day. [They] occur[ ] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115, 122 S. Ct. at 2073. Accordingly, a court may consider the entire scope of the hostile work environment claim, including "'behavior alleged outside the statutory time period, . . . so long as an act contributing to that hostile environment takes place within the statutory time period.'" Orlando v. Dep't of Transp., Comm'r, 459 F. App'x 8, 10 (2d Cir. 2012) (quoting Morgan, 536 U.S. at 105, 122 S. Ct. at 2068).

By contrast, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." Morgan, 536 U.S. at 114, 122 S. Ct. at 2073. Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113, 122 S. Ct. at 2072.

Here, Plaintiff's failure to promote claim is based on a discrete act that occurred nearly two years outside of the limitations period. The failure to promote claim is therefore time-barred and Plaintiff's allegation that Zimbler subjected her to a hostile work environment does not save this claim from dismissal.[10]  Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir.

_____

[10] It is not entirely clear whether Plaintiff even intended to assert a hostile work environment claim in the Amended Complaint. Although Plaintiff's 133-paragraph Amended Complaint contains a four-paragraph factual section titled, "Plaintiff Jones-Khan's Subjection to a Hostile Work Environment," (see Am. Compl. ¶¶ 67-70), the relevant counts are not styled as "hostile work environment" claims. Rather, they are styled as "disparate treatment" claims under Title VII and the ADEA. (See Am. Compl. ¶¶ 87-97.) However, "[d]isparate treatment and hostile work environment claims . . . are separate theories of unlawful discrimination," and they are subject to different elements and standards. Dauer v. Verizon Commc'ns Inc., No. 03-CV-5047, 2009 WL 186199, at *2 (S.D.N.Y. Jan. 26, 2009) (citing Morgan, 536 U.S. 101, 108-115, 122 S. Ct. at 2069-73).

In any event, the allegations of the Amended Complaint are woefully inadequate to state a hostile work environment claim. Although Plaintiff alleges that Zimbler subject her to daily harassment and that when he "chose to address [her], he would racially berate, reprimand, disrespect, and verbally attack

2004) ("The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period."); Butts v. N.Y. City Dep't of Hous. Pres. & Dev., No. 00-CV-6307, 2007 WL 259937, at *7 (S.D.N.Y. Jan. 29, 2007), aff'd, 307 F. App'x 596 (2d Cir. 2009) ("Plaintiff's claims do not fall within the 'continuing violation' doctrine and her allegations that her timely claims were part of a pattern of discrimination will not save her untimely claims from dismissal."), aff'd 307 F. App'x 596 (2d Cir. 2009); Sundaram v. Brookhaven Nat'l Lab., 424 F. Supp. 2d 545, 560 (E.D.N.Y. 2006) ("[T]he exception does not apply to discrete, completed employment actions such as . . . failures to promote . . . .").

---

Plaintiff," the Amended Complaint only alleges one specific instance of harassment, during which Zimbler allegedly told Plaintiff that he had "dealt with [her] kind before." (Am. Compl. ¶ 58.) Even accepting Plaintiff's contention that this comment was a reference to her race and age, one comment made over the course of three years of employment is insufficient to state a hostile work environment claim. See Kalola v. Int'l Bus. Machs. Corp., No. 13-CV-7339, 2015 WL 861718, at *9 (S.D.N.Y. Feb. 3, 2015) (dismissing hostile work environment claim for failure to state a claim where the plaintiff alleged "[t]wo discriminatory comments, made four years apart, over the course of a decade of employment"); see also Hendry v. Donahoe, 931 F. Supp. 2d 441, 449 (E.D.N.Y. 2013) ("To establish a hostile work environment claim, a plaintiff must demonstrate that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (ellipsis in original) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)).

In sum, the District's failure to promote Plaintiff occurred outside of the 300-day limitations period, and neither equitable tolling nor the continuing violations doctrine apply to save Plaintiff's claim from dismissal. The failure to promote claim is therefore time-barred and DISMISSED WITH PREJUDICE.[11]

### 2. Retaliatory Discharge

Plaintiff claims that the District terminated her in retaliation for engaging in two types of alleged protected activity under Title VII: (1) refusing to write a negative letter against the former principal and instead supporting him with his "civil rights" claim against the Westbury Board of Education (Am. Compl. ¶¶ 32-33); and (2) complaining to the acting assistant principal and the Westbury Board of Education regarding Zimbler's alleged discriminatory behavior, (Am. Compl. ¶¶ 62-66). Plaintiff's termination occurred in March 2013. Thus, unlike her failure to promote claim, Plaintiff's retaliatory discharge claim was not time-barred at the time she filed her administrative complaint. However, Defendants argue that Plaintiff did not exhaust her administrative remedies for her retaliatory discharge claim because she "did not allege [in her administrative complaint] that the District terminated her for engaging in protected activity

---

[11] It is unclear whether Plaintiff asserts a claim arising out of her alleged termination in 2010. To the extent that she does, the foregoing analysis would apply equally to any such claim.

[under Title VII]." (Defs.' Br. at 6.) As discussed below, the Court agrees that Plaintiff's retaliatory discharge claim must be dismissed for failure to exhaust her administrative remedies to the extent that her claim is premised on her alleged complaints about Zimbler's alleged discriminatory conduct. However, the allegations of Plaintiff's administrative complaint were sufficient to exhaust of her administrative remedies with regard to her claim that she was terminated for supporting the former school principal.

(a) <u>Applicable Law</u>

Claims not expressly included in an EEOC complaint still "may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." <u>Williams v. N.Y. City Hous. Auth.</u>, 458 F.3d 67, 70 (2d Cir. 2006) (citing <u>Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.</u>, 990 F.2d 1397, 1401 (2d Cir. 1993)). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." <u>Williams v. N.Y. City Hous. Auth.</u>, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks omitted) (alteration in original) (quoting <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 359–60 (2d Cir. 2001)). In making this inquiry, "the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is

grieving," and "[t]he central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." Id. (internal quotation marks omitted) (quoting Deravin v. Kerik, 335 F.3d 195, 201-02 (2d Cir. 2003)).

The Second Circuit has "frequently invoke[d] the 'reasonably related' doctrine when the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised." Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir. 2008) (collecting cases); see also Williams, 458 F.3d at 71 ("[B]ecause the factual underpinnings of a gender discrimination claim were presented in the complaint made to the EEOC, it was error to dismiss Williams's claim for failure to exhaust her administrative remedies."). This standard "'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering.'" Ximines v. George Wingate High Sch., 516 F.3d 156, 158 (2d Cir. 2008) (quoting Deravin, 335 F.3d at 201).

A retaliation claim asserted in federal complaint is "reasonably related" to an EEOC complaint where the EEOC complaint

"alleges facts from which a reader can infer a link between protected activity . . . and a subsequent adverse employment action." Morris v. David Lerner Assocs., 680 F. Supp. 2d 430, 438 (E.D.N.Y. 2010) (collecting cases); accord Dellaporte v. City Univ. of N.Y., 998 F. Supp. 2d 214, 232 (S.D.N.Y. 2014) ("A retaliation claim raised for the first time in federal court based on conduct that occurred before the EEOC Charge was completed is only 'reasonably related' to the EEOC discrimination complaint if the Charge contained factual allegations that would put the EEOC on notice of the underlying protected activity or suspected retaliatory animus."); see, e.g., Hernandez v. City of N.Y., No. 11-CV-6644, 2015 WL 321830, at *23 (S.D.N.Y. Jan. 23, 2015) (finding that the plaintiff's claim for retaliatory discharge claim was reasonably related to the claims expressly raised in the EEOC complaint because the plaintiff "alleged that . . . '[she] made several complaints via email and via telephone conversations of ongoing harassment and failure to make reasonable accommodations due to [her] disabilities,'" and that the defendant "violated the ADA by 'terminat[ing] [her] employment for failing to give [her] a reasonable accommodation" (alterations and ellipsis in original)).

Conversely, cases finding retaliation claims "not to be reasonably related to claims explicitly made in the charge . . . have generally involved charges which were devoid of

any reference to a retaliatory motive or any allegation that the plaintiff had engaged in a protected activity." Jenkins v. N.Y. City Transit Auth., 646 F. Supp. 2d 464, 472 (S.D.N.Y. 2009); see, e.g., O'Hara v. Mem'l Sloan-Kettering Cancer Ctr., 27 F. App'x 69, 70-71 (2d Cir. 2001) (summary order) ("The scope of an EEOC investigation cannot reasonably be expected to encompass retaliation when [the plaintiff] failed to put the agency on notice that she had engaged in the type of protected activity that is the predicate to a retaliation claim."); Dasrath v. Stony Brook Univ. Med. Ctr., 965 F. Supp. 2d 261, 269 (E.D.N.Y. 2013) ("[The] [p]laintiff's charge failed to alert the EEOC to the existence of [the plaintiff's letter complaining about his treatment before his retaliation] or to allege that plaintiff engaged in any protected activity, and therefore it failed to provide the EEOC adequate notice to investigate discrimination upon the basis of both retaliation and national origin or race.").

(b)  Application

This case presents a close question. However, in light of the "loose pleading" standard permitted for EEOC complaints, the Court finds that Plaintiff's administrative complaint sufficiently alludes to a potential protected activity such that it could reasonably prompt the EEOC to investigate Plaintiff's retaliation claim to the extent that it is premised on her support of the former school principal. In the section of the

administrative complaint form labeled "basis of discrimination," Plaintiff checked the boxes for "age," "race/color ethnicity," and "sex," but did not check the box for "retaliation." (Holtzer Decl. Ex. B. at 33.) This is not dispositive, however. Rather, a court must look to the factual allegations of the administrative complaint to determine whether it put the EEOC or the employer on notice of the existence of the claim asserted. See, e.g., Morris, 680 F. Supp. 2d at 439 ("[E]ven if the ['retaliation'] box was not checked, the claim is still exhausted if the EEOC charge put the agency on notice as to the existence of such a claim."); Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens, No. 01-CV-0326, 2003 WL 22019073, at *5 (E.D.N.Y. Aug. 26, 2003) (same). Here, Plaintiff attached a letter to her administrative complaint that stated that "Mr. Zimbler d[id] not approve of [her] support of the former principal (Mr. Powell)" and that he "made it [un]comfortable for [her] and any faculty/staff that openly supported his predecessor." (Holtzer Decl. Ex. B. at 36.) Additionally, in the narrative section of the administrative complaint, Plaintiff alleged that "Mr. Zimbler never like[d] [her] when he came to work in Westbury Middle School because [she] was a friend [of] Mr. Powell, the former principal." (Holtzer Decl. Ex. B. at 37.) The Court finds that these allegations, coupled with the fact that Plaintiff checked the box for "fired/laid me off" in the section of the administrative complaint labeled "acts of discrimination,"

at least gave the District "adequate notice" that Plaintiff might raise a retaliatory discharge claim and could reasonably have prompted the EEOC to investigate whether the District terminated Plaintiff based on Plaintiff's alleged support of the former school principal. Title VII "protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, 'including . . . expressing support of co-workers who have filed formal charges.'" Matima v. Celli, 228 F.3d 68, 78-79 (2d Cir. 2000) (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)). Although Plaintiff's EEOC complaint does not specifically allege that the former school principal filed formal charges, the Court finds that the allegations are sufficient since "precise pleading is not required for Title VII exhaustion purposes." Deravin, 335 F.3d at 202. Accordingly, Plaintiff's claim that she was terminated in retaliation for supporting the former principal survives.[12]

---

[12] The Court does seriously question whether Plaintiff can ultimately succeed on this claim, however. First, although there is not a bright-line rule, the Second Circuit has found that a "temporal gap of almost two years between the date of [the] protected activity and the alleged retaliation [to be] too great to give rise to an inference of causation." Harrison v. U.S. Postal Serv., 450 F. App'x 38, 41 (2d Cir. Dec. 8, 2011). Here, the Amended Complaint does not specifically identify the time frame during which Plaintiff "supported" the former principal, although she appears to allege that she engaged in this activity in 2010, and Plaintiff was terminated nearly three years later. Second, the Amended Complaint is extremely sparse as to the details surrounding this claim. It does not specify how Plaintiff "supported" the former principal, nor does it

Analysis of Plaintiff's retaliatory discharge claim based her complaints regarding Zimbler's alleged discriminatory behavior yields a different result. Plaintiff's administrative complaint contains no facts whatsoever that would put the District on notice of this claim or lead the EEOC to investigate a retaliatory action in this regard. The Administrative Complaint does not allege that Plaintiff complained to anyone regarding Zimbler's alleged conduct prior to her termination, and Plaintiff's allegations suggesting that the District terminated her for supporting the former school principal would not have put the EEOC on notice that Plaintiff was also alleging retaliation based on her complaints about race and age discrimination. See Russell v. Aid to Developmentally Disabled, Inc., No. 12-CV-0389, 2013 WL 633573, at *15 (E.D.N.Y. Feb. 20, 2013). Accordingly, Plaintiff's retaliatory discharge claim based on her alleged complaints about Zimbler's discriminatory conduct is DISMISSED WITH PREJUDICE.

---

provide sufficient facts for the Court to determine whether the former principal was involved in a proceeding which would trigger Plaintiff's right to an informal protest under Title VII. However, the District has not moved to dismiss this claim on the merits. The Court therefore assumes that Plaintiff engaged in protected activity under Title VII for the purposes of this Memorandum and Order.

III. <u>NYSHRL Claims</u>

Defendants contend that Plaintiff's NYSHRL claims are barred by the "election of remedies" doctrine. (Defs.' Br. at 9-11, 14.) The Court agrees.

Section 297(9) of the NYSHRL states:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. EXEC. LAW. § 297(9). Thus, absent one of the three exceptions listed above, "the statute divests courts of jurisdiction over human rights claims which have been presented to the [NYS]DHR.'" <u>Jeter v. N.Y. City Dep't of Educ.</u>, 549 F. Supp. 2d 295, 302 (E.D.N.Y. 2008) (quoting <u>Hamilton v. Niagara Frontier Transp. Auth.</u>, No. 00-CV-0300, 2007 WL 2241794, at *11 (W.D.N.Y. July 31, 2007)); <u>accord</u> <u>Moodie v. Fed. Reserve Bank of N.Y.</u>, 58 F.3d 879, 884 (2d Cir. 1995) ("<u>These remedies are intended to be mutually exclusive.</u> Once a complainant elects the administrative forum by filing a complaint with the Commission on Human Rights, that becomes the sole avenue of relief, and subsequent judicial action

on the same complaint is generally barred . . . ." (emphasis in original) (internal quotation marks and citation omitted)).

Plaintiff argues that her NYSHRL claims are not barred by the election of remedies doctrine because "additional facts provided in the Plaintiff's amended complaint were not considered by the NYSDHR and the NYSDHR did not litigate Plaintiff's retaliation claim." (Pl.'s Opp. Br. at 18.) However, "[t]he election-of-remedies bar is not limited to the precise claims brought in the administrative proceeding, but extends to all claims arising out of the same events." Wiercinski v. Mangia 57, Inc., No. 09-CV-4413, 2010 WL 2681168, at *2 (E.D.N.Y. July 2, 2010). Thus, "[i]f substantially the same facts are involved, then the doctrine of election of remedies will bar any subsequent court proceedings." Wiercinski v. Mangia 57, Inc., No. 09-CV-4413, 2010 WL 2681168, at *2 (E.D.N.Y. July 2, 2010) (internal quotation marks and citation omitted). "The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies." Id. (internal quotation marks and citation omitted).

Here, Plaintiff presented the claims asserted in this action to the NYSDHR in a substantially similar form. Plaintiff's administrative complaint alleged that the District and Zimbler discriminated against her on the basis of age, race, and gender. In the section of the administrative complaint form labeled "acts

of discrimination," Plaintiff checked the boxes for "fired me/laid me off," "denied me leave time or other benefits," and "gave me a disciplinary notice or negative performance evaluation," and in the "other" section, she wrote "problem [sic] in past." (Holtzer Decl. Ex. B. at 35.) In the narrative section, Plaintiff alleged that Zimbler did not like Plaintiff because she "was a friend [of] Mr. Powell," that Zimbler "hate [sic] black strong female," and that "when a white person have [sic] a problem [Zimbler] always said it was OK." (Holtzer Decl. Ex. B. at 37.) Plaintiff also attached a letter to the administrative complaint that identified many of the claims set forth in this action, including that: (1) "Mr. Zimbler falsely accused and verbally attacked" Plaintiff for "call[ing] students 'stupid and dumb,'" (2) "Mr. Zimbler continued his unfair and abusive behavior towards" Plaintiff, and (3) "Mr. Zimbler d[id] not approve of [Plaintiff's] support of the former principal." (Holtzer Decl. Ex. B. at 36.) That Plaintiff's counsel may have fleshed out or included new claims in the Amended Complaint is not dispositive. Plaintiff is therefore precluded from re-litigating these claims here. Accordingly, Plaintiff's NYSHRL claims are DISMISSED WITH PREJUDICE.

## IV. Breach of Contract

Plaintiff also asserts a breach of contract claim against the District. (Am. Compl. ¶¶ 121-27.) She bases this claim on "implied promises that Plaintiff would be treated fairly

and in good faith and not discriminated against due to her race, color, age, and/or national origin during the course of her employment." (Am. Compl. ¶ 122.) The District argues that the breach of contract claim should be dismissed because, inter alia, Plaintiff was an at-will employee and therefore cannot maintain a claim for breach of contract under New York law. (Defs.' Br. at 15.) The Court agrees.

"Under New York law, an employment relationship covering an indefinite period of time is deemed to be at-will, and as such is terminable at any time by either party, with or without cause." Abdi v. Brookhaven Sci. Assocs., LLC, 447 F. Supp. 2d 221, 229 (E.D.N.Y. 2006) (collecting cases). The New York Court of Appeals has held that New York's at-will rule is only a rebuttable presumption. Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 466, 443 N.E.2d 441, 445, 457 N.Y.S.2d 193, 197 (1982). Plaintiff's breach of contract allegations fail to rebut that presumption, however, since "[a]n employer's general statements reiterating its obligation to abide by existing law concerning discrimination and equal employment do not serve as the basis for such a claim." Abdi, 447 F. Supp. 2d at 229; see also Burger v. Litton Indus., Inc., No. 91-CV-0918, 1996 WL 421449, at *22 (S.D.N.Y. Apr. 25, 1996), adopted by 1996 WL 609421 (S.D.N.Y. Oct. 22, 1996). Accordingly, Plaintiff's breach of contract claim is DISMISSED WITH PREJUDICE.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint (Docket Entry 16) is GRANTED IN PART and DENIED IN PART as follows:

Defendants' motion is GRANTED with respect to: (1) all claims under Title VII and the ADEA against Zimbler; (2) the failure to promote claims under Title VII and the ADEA against the District; (3) the retaliatory discharge claim under Title VII against the District based on Plaintiff's alleged complaints regarding Zimbler's alleged discriminatory conduct; and (4) the breach of contract claim against the District and Zimbler. Since amendment of these claims would be futile, these claims are DISMISSED WITH PREJUDICE.

Defendants' motion to dismiss is DENIED with respect to Plaintiff's retaliatory discharge claim under Title VII against the District based on Plaintiff's alleged support of the former school principal.

The District has not moved to dismiss Plaintiff's disparate treatment claims under Title VII or the ADEA. These claims will therefore proceed to discovery.

Since there are no claims remaining against Zimbler, the Clerk of the Court is directed to TERMINATE him as a defendant in this action.

Defendants' motion to dismiss the original Complaint (Docket Entry 11) is DENIED AS MOOT.


                              SO ORDERED.


                              /S/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:      March _31_, 2015
            Central Islip, NY