UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x
GLORIA E. JONES-KHAN,

                    Plaintiff,

          -against-                          MEMORANDUM & ORDER
                                             13-CV-7144(JS)(GRB)
WESTBURY BOARD OF EDUCATION—WESTBURY
UNION FREE SCHOOL DISTRICT,

                    Defendant.
---------------------------------------x
APPEARANCES
For Plaintiff:      Chauncey D. Henry, Esq.
                    Henry Law
                    825 E. Gate Blvd., Suite 106
                    Garden City, NY 11530

For Defendant:      Adam I. Kleinberg, Esq.
                    Melissa Lauren Holtzer, Esq.
                    Sokoloff Stern LLP
                    179 Westbury Ave.
                    Carle Place, NY 11514

SEYBERT, District Judge:

          Plaintiff Gloria E. Jones-Khan ("Plaintiff") commenced

this action asserting claims pursuant to Title VII of the Civil

Rights Act of 1964 ("Title VII") and the Age Discrimination in

Employment Act of 1967 ("ADEA").[1]  Presently pending before the

Court is defendant Westbury Board of Education—Westbury Union Free

School District's ("Defendant" or the "District") motion for

_____

[1] As set forth more fully below, Plaintiff's state law claims
were dismissed pursuant to the Court's Memorandum and Order
dated March 31, 2015.  Jones-Khan v. Westbury Bd. of Educ.-
Westbury Union Free Sch. Dist., No. 13-CV-7144, 2015 WL 1529839
(E.D.N.Y. Mar. 31, 2015).

summary judgment. (Def.'s Mot., Docket Entry 49.) For the following reasons, Defendant's motion is GRANTED.

Preliminarily, the Court addresses Plaintiff's proposed Rule 56.1 Counterstatement dated December 30, 2016, and filed in conjunction with her opposition to Defendant's motion (the "Counterstatement"). (Pl.'s 56.1 Counterstatement, Docket Entry 59.) The Court's consideration of this issue requires a brief procedural history. On January 26, 2016, Defendant filed a request for a pre-summary judgment motion conference and indicated that Plaintiff's counsel rejected its Local Rule 56.1 Statement as untimely and "confirmed that he does not intend to respond to defendant's 56.1 statement." (Def.'s Jan. Ltr., Docket Entry 41.) On February 26, 2016, the Court conducted a pre-motion conference and indicated that a schedule for the filing of Plaintiff's Rule 56.1 Counterstatement and Defendant's summary judgment motion would be set following the resolution of discovery issues by Magistrate Judge Gary R. Brown. (Minute Entry, Docket Entry 44.)

On July 8, 2016, Defendant filed a letter motion requesting that parties resume dispositive motion practice. (Def.'s July Ltr. Mot, Docket Entry 46.) On July 12, 2016, the Court granted Defendant's request and directed the parties to submit a briefing schedule. On August 31, 2016, the Court approved the parties' proposed briefing schedule and directed Plaintiff to file her Rule 56.1 Counterstatement on or before September 16,

2016.  On September 29, 2016, Defendant advised the Court that Plaintiff failed to timely serve her Rule 56.1 Counterstatement and failed to request an extension from the Court, notwithstanding Defendant's consent to a brief extension.  (Def.'s Sept. Ltr., Docket Entry 48.)  Plaintiff failed to respond to Defendant's letter, and Defendant filed its motion for summary judgment on October 17, 2016.  (See Def.'s Mot.)

On November 29, 2016, Plaintiff requested an extension of time to oppose Defendant's motion and file her Rule 56.1 Counterstatement.  (Pl.'s Ltr., Docket Entry 54.)  On December 2, 2016, the Court granted Plaintiff's request for additional time to oppose Defendant's motion, but denied Plaintiff's request for an extension of time to serve her Rule 56.1 Counterstatement, noting that Plaintiff failed to timely request an extension. Nevertheless, on December 30, 2016, Plaintiff filed her Counterstatement.  (Docket Entry 59.)

Local Civil Rule 56.1 requires, inter alia, that: (1) the party moving for summary judgment submit a statement of undisputed material facts, and (2) the opposing party submit a corresponding statement responding to each paragraph in the moving party's statement.  Local Rule 56.1(a)-(b).  Where the non-movant fails to submit an appropriate counterstatement of material facts, "courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving

party on the basis of uncontroverted facts." <u>D'Nelson v. Costco Wholesale Corp.</u>, No. 03-CV-0219, 2006 WL 767866, at *3 (E.D.N.Y. Mar. 24, 2006). While Plaintiff requests that the Court exercise its discretion to consider her Counterstatement, (Pl.'s Br., Docket Entry 58, at 3-4), the Court declines to do so in light of Plaintiff's failure to timely file her Counterstatement or request an extension of time and the Court's prior rejection of Plaintiff's request to file a late Counterstatement. Accordingly, the Court deems Defendant's Rule 56.1 Statement admitted.[2] Nevertheless, Defendant is not "absolve[d] . . . of the burden of showing that it is entitled to judgment as a matter of law," and "remains obligated to demonstrate that no genuine issue of material fact exists to warrant a trial." <u>D'Nelson</u>, 2006 WL 767866, at *3 (internal quotation marks and citation omitted).

<u>BACKGROUND</u>[3]

Plaintiff is an African-American female who is currently sixty-nine years old. (Am. Compl. ¶ 8.) In 2003, Plaintiff was hired as a teacher's aide at the District's Middle School. (Def.'s

---

[2] Defendant's 56.1 Statement is dated January 6, 2016 and Defendants submitted an Affidavit of Service indicating that it was mailed to Plaintiff's counsel at 1597 Grand Avenue, Baldwin, New York on January 6, 2016.

[3] The following facts are drawn from Defendant's Local Rule 56.1 Statement and deposition testimony in the record. As addressed above, the Court declines to consider Plaintiff's Counterstatement. All internal quotation marks and citations have been omitted.

56.1 Stmt., Docket Entry 41-1 at 2-15, ¶¶ 21-22, 24, 26.) Plaintiff testified that in 2009 or 2010, she obtained a New York State "Truant License," which is also referred to as a "School Attendance Teacher" License. (Def.'s 56.1 Stmt. ¶¶ 8-9; Pl.'s Dep. Tr., Pl.'s Ex. M. Docket Entry 60-3, 8:12-21, 12:21-13-2.) Plaintiff does not possess other professional licenses or certifications. (Def.'s 56.1 Stmt. ¶ 10.)

During Plaintiff's tenure as a teacher's aide, David Powell ("Powell") served as the Principal of the Middle School. (Pl.'s Dep. Tr. 29:4-9.) Powell was terminated on August 31, 2010, after a New York Education Law § 3020-a hearing. (Def.'s 56.1 Stmt. ¶ 33.) Plaintiff testified that Powell was terminated after a teacher and guidance counselor complained that he sexually harassed them. (Def.'s 56.1 Stmt. ¶ 34.) Plaintiff alleged that she believed Powell was innocent and supported him by requesting that teachers provide "character letters" to Powell's attorney. (Def.'s 56.1 Stmt. ¶¶ 36-37.)

Plaintiff testified that sometime after she received her Truant License, she spoke with the District's then-human resources manager about an available permanent substitute teacher position at the Middle School. (Def.'s 56.1 Stmt. ¶ 24; Pl.'s Dep. Tr. 23:2-24:22.) Plaintiff was selected for the position by former Middle School Principal Dennis Hinson ("Hinson"). (Def.'s 56.1

Stmt. ¶ 26.)  Plaintiff testified that she started as a permanent substitute in or about 2010 or 2011.  (Pl.'s Dep. Tr. 26:7-9.)

In 2010, Plaintiff was formally evaluated by Hinson, Felicia Crawford ("Crawford"), who is African-American and serves as Assistant Principal at the Middle School, and Cassandra Spencer. (Def.'s 56.1 Stmt. ¶¶ 28, 52-53; Crawford's Dep. Tr., Def.'s Decl. Ex. I, Docket Entry 50-1 at 385-542, 12:18-13:2.)  Crawford testified that they performed a formal performance evaluation to ensure that Plaintiff "understood that [administration] wanted her to work all on certain things, specifically, her language use in the classroom with students."  (Def.'s 56.1 Stmt. ¶ 54 (alteration in original).)

In 2011, the District hired David Zimbler ("Zimbler"), a white male in his forties, as the Principal of the Middle School. (Def.'s 56.1 Stmt. ¶¶ 30-31; Pl.'s Dep. Tr. 29:14-17.)  Plaintiff alleged that Zimbler made the working environment "uncomfortable" for faculty members who openly supported Powell and Zimbler made her "uncomfortable" by ignoring her in the hallways.  (Pl.'s Dep. Tr. 91:20-92:11.)  Zimbler testified that he was hired by the District after Powell's termination, he did not know why Powell was no longer employed by the District, and he was unaware that teachers prepared "character letters" for Powell.  (Def.'s 56.1 Stmt. ¶¶ 38-41.)  Crawford testified that she and Zimbler did not

discuss the circumstances surrounding Powell's termination. (Def.'s 56.1 Stmt. ¶ 46.)

In 2013, students complained to Zimbler about Plaintiff and reported that Plaintiff "called them stupid and dumb and stated that Hispanic kids always give [her] trouble in the classroom." (Def.'s 56.1 Stmt. ¶¶ 57-58.) Plaintiff denied calling the students "stupid and dumb" but stated that she asked two Hispanic students "[w]hy don't you do like the other Hispanic kids and sit down and obey."[4] (Def.'s 56.1 Stmt. ¶¶ 60-61.) At Plaintiff's request, Zimbler tasked then-Dean Kenya Vanterpool ("Vanterpool"), who is African-American, with re-interviewing the students. (Def.'s 56.1 Stmt. ¶¶ 61-62.) Vanterpool confirmed that Plaintiff made inappropriate comments about Hispanic students. (Def.'s 56.1 Stmt. ¶ 63.) Zimbler prepared a memorandum memorializing his

---

[4] At her deposition, Plaintiff testified as follows:

> Then [Zimbler] said to me the student said I said something about the Hispanic kids always give me trouble in the classroom. No. I said the Hispanic kids always give me trouble in the classroom. And I referred back to him, and I didn't say the Hispanic kids give me trouble. I said, I have all these Hispanic kids in the classroom, and you two students, kids, always give me problems. Why? I said, [w]hy don't you sit down like the other students? . . .
>
> I said, [w]hy don't you do like the other Hispanic kids and sit down and obey?

(Pl.'s Dep. Tr. 57:18-58:3; 61:23-24.)

meeting with Plaintiff and Vanterpool's findings; this memorandum states that Zimbler advised Plaintiff that the District would likely pursue disciplinary action against her if her behavior recurred. (Def.'s 56.1 Stmt. ¶¶ 64-66.) Plaintiff testified that during this meeting, Zimbler stated "I dealt with your kind of people." (Pl.'s Dep. Tr. 137:14-21.)

Eudes Budhai ("Budhai"), who Plaintiff alleges is Hispanic, was appointed Assistant Superintendent for Curriculum, Instruction, and Personnel, in or about 2012. (Budhai's Dep. Tr., Pl.'s Ex. O, Docket Entry 60-5, 8:2-12; Pl.'s Dep. Tr. 54:12-17.) Previously, Budhai served as the District's Director of Second Language Acquisition and Adult Learning Center for ten years. (Budhai's Dep. Tr. 18:16-25.) Budhai was not the Assistant Superintendent when Plaintiff was hired as a permanent substitute teacher. (Def.'s 56.1 Stmt. ¶ 70.)

Budhai "routinely checks the certifications of District staff to ensure that the District is in compliance with state requirements." (Def.'s 56.1 Stmt. ¶ 75.) During an "audit[ ]" in March 2013, Budhai discovered that Plaintiff did not possess the appropriate certification for her position. (Def.'s 56.1 Stmt. ¶ 76.) Budhai scheduled a meeting with Plaintiff for March 8, 2013. (Def.'s 56.1 Stmt. ¶ 77.) Prior to the meeting, Budhai sent Plaintiff a letter in which he advised Plaintiff that she did not possess the appropriate certification and provided her with an

opportunity to proffer "evidence of other teaching certification and or enrollment in an accredited graduate program, at the rate of not less than six semester hours per year." (Def.'s 56.1 Stmt. ¶ 79.)

During their meeting, Budhai showed Plaintiff the relevant New York State regulations regarding the certification requirements for her position and told her that she was not qualified for her position. (Def.'s 56.1 Stmt. ¶¶ 81-82.) Plaintiff asked Budhai why this issue was not raised sooner, and Budhai told her that the District made an error. (Def.'s 56.1 Stmt. ¶¶ 83-84.) Budhai testified that he advised Plaintiff that she would be eligible for the permanent substitute position if she enrolled in an education program geared toward certification. (Def.'s 56.1 Stmt. ¶ 88.) Plaintiff was not enrolled in any classes at the time of her termination and had not enrolled in classes since 2012. (Def.'s 56.1 Stmt. ¶¶ 91-92.)

Plaintiff advised Budhai that she had conflicts with Zimbler. (Def.'s 56.1 Stmt. ¶ 85.) Budhai testified that he told Plaintiff that Zimbler had nothing to do with her termination and indicated that Plaintiff could pursue the District's per diem substitute teacher list. (Def.'s 56.1 Stmt. ¶¶ 86-87.) Budhai testified that he did not provide Zimbler with advance notice of Plaintiff's termination. (Def.'s 56.1 Stmt. ¶ 97.)

Budhai sent Plaintiff a letter confirming her termination, which included instructions regarding applying for the per diem substitute teacher list. (Def.'s 56.1 Stmt. ¶¶ 93-94.) Plaintiff refused to apply for the per diem list. (Def.'s 56.1 Stmt. ¶ 95.) Plaintiff testified that she tried to call into the per diem substitute list phone number but her assigned code number was not accepted. (Pl.'s Dep. Tr. 113:9-21.) Plaintiff did not try do anything else to get on the per diem list after that attempt. (Pl.'s Dep. Tr. 116:3-8.)

Presently, the District's Middle School employs two permanent substitute teachers: Marie Joseph, an African-American who is fifty-four years old, and Joseph Cabale, who is Hispanic and thirty-four years old. (Def.'s 56.1 Stmt. ¶¶ 98-100, 102-103.) At the time of her application, Ms. Joseph was certified to teach English to Speakers of Other Languages and French. (Def.'s 56.1 Stmt. ¶ 101.) At the time of his application, Mr. Cabale was certified to teach Students with Disabilities and Childhood Education. (Def.'s 56.1 Stmt. ¶ 104.)

I. <u>Procedural History</u>

On May 14, 2014, Plaintiff filed an Amended Complaint against the District and Zimbler asserting the following claims: (1) Title VII claims for disparate treatment and failure to promote based on race, (2) ADEA claims for disparate treatment and failure to promote based on age, (3) retaliatory discharge in violation of

Title VII, (4) New York State Human Rights Law ("NYSHRL") claims for discrimination based on age and race, and (5) breach of contract. (See generally Am. Compl., Docket Entry 15.) On May 19, 2014, Defendant and Zimbler moved to dismiss the Amended Complaint. (See Docket Entry 16.)

On March 31, 2015, the Court granted in part and denied in part Defendant and Zimbler's motion to dismiss. Jones-Khan, 2015 WL 1529839, at *13. The Court dismissed the following claims: (1) all claims under Title VII and the ADEA against Zimbler, (2) failure to promote under Title VII and the ADEA against the District, (3) retaliatory discharge under Title VII based on Plaintiff's alleged complaints regarding Zimbler's discriminatory conduct against the District, (4) discrimination under the NYSHRL, and (5) breach of contract. Id. at *11-13. The Court denied dismissal of Plaintiff's Title VII retaliatory discharge claim based on her alleged support of Powell. Id. at *13. Zimbler was terminated from the action and Plaintiff's remaining claims were for discrimination under Title VII and the ADEA, and retaliatory discharge based on Plaintiff's alleged support of Powell. Id.

II.  Defendant's Motion

On October 17, 2016, Defendant moved for summary judgment. (See Def.'s Mot.) Defendant argues that Plaintiff's race and age discrimination claims fail because: (1) she was not qualified for her position, (2) there is no inference of

discrimination in the absence of any evidence that Zimbler was involved in her termination, (3) Plaintiff's lack of appropriate certification constitutes a legitimate, non-discriminatory reason for her termination, and (4) Plaintiff cannot demonstrate that age was the "but-for" cause for her termination. (Def.'s Br., Docket Entry 51, at 5-9.) Defendant also argues that Plaintiff has failed to establish a retaliatory discharge claim because she did not engage in a protected activity, there is no causal connection between her support for Powell and her termination, the District had a legitimate, non-retaliatory reason for her termination, and Plaintiff cannot demonstrate "but-for" causation. (Def.'s Br. at 10-14.)

Plaintiff argues that she was qualified for her position as she "possessed the 'basic skills necessary' for the permanent substitute position for which she applied." (Pl.'s Br., Docket Entry 58, at 7.) Plaintiff notes that when she was terminated, she was invited to work as a per diem substitute, "a position which required the same essential qualifications as the permanent substitute position." (Pl.'s Br. at 8.) Plaintiff avers that a discriminatory inference can be drawn based on Crawford's testimony that the number of African-American teachers has decreased since Zimbler was hired as Principal, and Zimbler's refusal to socialize with or acknowledge Plaintiff. (Pl.'s Br. at 9.) Additionally, Plaintiff alleges that she was replaced by

a Caucasian permanent substitute teacher in her twenties or thirties, and asserts that she was terminated one week after she met with Zimbler regarding the student complaints. (Pl.'s Br. at 10, 12.) Plaintiff argues that age was the "but-for" cause of her termination because: (1) she was replaced by a younger permanent substitute teacher, and (2) on an earlier occasion when she inquired about a job opportunity Zimbler remarked "[a]ren't you too old to want to do this job." (Pl.'s Br. at 12-13.)

With respect to her retaliation claim, Plaintiff argues that she "engaged in a protected activity when she openly disclosed to Mr. Zimbler that he is favoring the student's [sic] over her and his opposition to Mr. Powell's administration." (Pl.'s Br. at 15.) Plaintiff further argues that there is a causal connection between her protected activities and her termination since her termination occurred one week after she "opposed [Zimbler's] decision regarding the students' remarks against Plaintiff." (Pl.'s Br. at 16-17.) Plaintiff avers that Defendant's non-retaliatory reason for her termination is pretextual since "Ms. Crawford testified that she definitely believe that both race and Plaintiff[']s complaint against Defendant played a role in the decision to terminate Plaintiff's employment." (Pl.'s Br. at 19.)

<u>DISCUSSION</u>

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."
FED. R. CIV. P. 56(a). A genuine factual issue exists where "the
evidence is such that a reasonable jury could return a verdict for
the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed 2d 202 (1986). In
determining whether an award of summary judgment is appropriate,
the Court considers the pleadings, deposition testimony,
interrogatory responses, and admissions on file, together with
other firsthand information that includes but is not limited to
affidavits. Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there
are no genuine issues of material fact. Sheet Metal Workers' Nat'l
Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL
6449420, at *2 (E.D.N.Y. Oct. 23, 2015). Once the movant makes
such a showing, the non-movant must proffer specific facts
demonstrating "a genuine issue for trial." Giglio v. Buonnadonna
Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y.
Sept. 25, 2009) (internal quotation marks and citation omitted).
Conclusory allegations or denials will not defeat summary
judgment. Id. However, in reviewing the summary judgment record,
"'the court is required to resolve all ambiguities and draw all
permissible factual inferences in favor of the party against whom
summary judgment is sought.'" Sheet Metal Workers' Nat'l Pension

Fund, 2015 WL 6449420, at *2 (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).


I.    Discrimination Claims

       Title VII and ADEA discrimination claims are analyzed under the burden-shifting framework detailed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Wolf v. Time Warner, Inc., 548 F. App'x 693, 694 (2d Cir. 2013). Pursuant to this test, Plaintiff bears the de minimis burden of stating a prima facie employment discrimination claim by demonstrating: "(1) [s]he belongs to a protected class; (2) [s]he was qualified for [her] job; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." Brenner v. City of N.Y. Dep't of Educ., 132 F. Supp. 3d 407, 416 (E.D.N.Y. 2015), aff'd, 659 F. App'x 52 (2d Cir. 2016). Next, the defendant must proffer a "legitimate, nondiscriminatory reason for [its] action." Id. (internal quotation marks and citation omitted).

       If the defendant presents such a reason, the "presumption of employment discrimination created by the plaintiff's prima facie case is rebutted" and the burden returns to the plaintiff to establish that the defendant's

"nondiscriminatory reasons were mere pretext for discrimination."
Hall v. N. Bellmore Sch. Dist., 55 F. Supp. 3d 286, 295 (E.D.N.Y.
2014) (internal quotation marks and citation omitted).  However,
to demonstrate pretext on an ADEA claim, the plaintiff must
establish that age was the "but-for" cause of the defendant's
adverse employment action.  Id. at 295-96 (internal quotation marks
and citation omitted).

　　　Defendant does not dispute that Plaintiff was a member
of a protected class based on her race and age and Plaintiff's
termination constitutes an adverse employment action.  Thus, the
Court will address whether Plaintiff was qualified for her position
and whether her termination occurred under circumstances giving
rise to an inference of discrimination.

　　　In order to establish the qualification element of a
discrimination claim, the plaintiff is only required to "establish
basic eligibility for the position at issue, and not the greater
showing that he satisfies the employer."  Markovich v. City of
N.Y., No. 09-CV-5553, 2013 WL 11332465, at *5 (E.D.N.Y. Aug. 21,
2013), aff'd, 588 F. App'x 76 (2d Cir. 2015) (internal quotation
marks and citation omitted).  However, courts in this Circuit have
held that teacher-plaintiffs were not qualified for purposes of
the ADEA and Americans with Disabilities Act ("ADA") where they
lacked the requisite certification.  See, e.g., Dancause v. Mount
Morris Ctr. Sch. Dist., No. 13-CV-6019, 2013 WL 2946063, at *2-3

16

(W.D.N.Y. Jun. 14, 2013), aff'd 590 F. App'x 27 (2d Cir. 2014) (holding, in the context of an ADA action, that "[w]here a professional license is required as part of a qualification for a job, a lack of such license renders the employee unqualified for the position" (citing Kinneary v. City of N.Y., 601 F.3d 151, 157 (2d Cir. 2010))); Carmellino v. Dist. 20 of N.Y. City Dep't of Educ., No. 03-CV-5942, 2006 WL 2583019, at *33 (S.D.N.Y. Sept. 6, 2006), aff'd on other grounds sub. nom. Mauskopf v. Dist. 20 of N.Y.C. Dep't of Educ., 299 F. App'x 100 (2d Cir. 2008), and Papasmiris v. Dist. 20 of N.Y. City Dep't of Educ., 299 F. App'x 97 (2d Cir. 2008), (holding that one of the ADEA plaintiffs was not qualified for his desired position and noting that "[i]n the field of education, courts have held that a teacher lacking the requisite certification to teach cannot complain of a school board's failure to hire"); Falchenberg v. N.Y. City Dep't of Educ., 375 F. Supp. 2d 344, 348 (S.D.N.Y. 2005) (holding that the ADA plaintiff was not qualified where she failed to take an examination that was a "necessary prerequisite" for her teaching certification).

Defendant has submitted an affidavit from Ann Jasinski ("Jasinski"), Assistant Director of the Office of Teaching Initiatives of the New York State Education Department ("NYSED"). (Jasinski Aff., Def.'s Ex. D, Docket Entry 50-1 at 225-30, ¶ 1.) Jasinski is responsible for issuing certificates and licenses to

New York State teachers, administrators, and school service professionals. (Jasinski Aff. ¶ 1.) Jasinski alleges that NYSED records indicate that Plaintiff was issued a provisional school attendance teacher certificate pursuant to 8 N.Y.C.R.R. § 80-2.3(a) effective from September 1, 2008, through August 31, 2013. (Jasinski Aff. ¶¶ 4-5.) Plaintiff was granted a two-year extension and her provisional certificate expired on August 31, 2015. (Jasinski Aff. ¶¶ 6-7.) Plaintiff testified that her only professional license is a "truant license," which is also called a school attendance teacher license. (Pl.'s Dep. Tr. 8:12-18, 12:21-13:2.) Thus, it is undisputed that Plaintiff's sole professional license is her provisional school attendance teacher license.

Part 80 of the New York Codes, Rules and Regulations defines "pupil personnel service" as "one of the following services offered in elementary and secondary schools: school attendance teacher, school counselor, school dental hygiene teacher, school nurse-teacher, school psychologist, and school social worker." 8 N.Y.C.R.R. § 80-1.1(30). "Pupil personnel service" is differentiated from "classroom teaching service," which is defined as "teaching service in the public schools of New York State, which requires certification pursuant to this Part, excluding pupil personnel service or administrative and supervisory service." 8 N.Y.C.R.R. § 80-1.1(12).

Jasinski alleges that "substitute teachers who do not hold a valid classroom teaching certificate may not work for more than 40 days in a school district in a school year," (Jasinski Aff. ¶ 13) citing 8 N.Y.C.R.R. § 80-5.4(c). Section 80-5.4 addresses substitute teachers and provides that "[t]he responsibility for the employment of appropriately qualified substitutes rests with the chief school officer. Persons employed on a long term basis[5] shall have the proper certification for the position, except as provided in paragraphs (c)(2) and (3) of this section." 8 N.Y.C.R.R. § 80-5.4(b). With respect to substitute teachers who possess "valid teaching certificates or certificates of qualification,"[6] Section 80-5.4 states that "[s]ervice may be rendered in any capacity, for any number of days." 8 N.Y.C.R.R. § 80-5.4(c)(1). Substitute teachers who do not possess a valid certificate but are "completing collegiate study toward certification at the rate of not less than six semester hours per year" may also render service "in any capacity, for any number of days." 8 N.Y.C.R.R. § 80-5.4(c)(2). However, substitute teachers without a valid certificate who are not pursuing certification may

---

[5] "Long-term basis" is defined as "employment for more than 40 days by a school district or board of cooperative educational services in a school year." 8 N.Y.C.R.R. 80-5.4(a)(2).

[6] "Certificate of qualification" is defined as "a credential evidencing the holder is eligible for a provisional certificate in the area noted thereon." 8 N.Y.C.R.R. 80-1.1(b)(9).

only render services for no more than forty days absent "extreme circumstances" where the district has been unable to recruit a properly certified candidate.  8 N.Y.C.R.R. § 80-5.4(c)(3)(ii).

The Court concurs with Defendant that Plaintiff's school attendance teacher certificate did not render her qualified for the position of permanent substitute teacher.  As set forth above, substitute teachers working more than forty days per school year must either possess "valid teaching certificates or certificates of qualification" or be working toward certification at the rate of at least six semester hours per year.  8 N.Y.C.R.R. § 80-5.4(c)(1)-(2).  Plaintiff was certified as a school attendance teacher, which falls under "pupil personnel service," not "classroom teaching service."  Parenthetically, Section 80-5.4 also provides that if a substitute teacher who is certified or working toward certification is employed for "more than an itinerant basis"--namely, more than forty school days per year-- "such persons will be employed in an area for which they are certified . . . [or] seeking certification."  8 N.Y.C.R.R. § 80-5.4(a)(3), (c)(1)-(2).  While Plaintiff testified that she was pursuing her master's degree in social work, the last time she was enrolled in a master's program was in or about 2012.  (Pl.'s Dep. Tr. at 6:12-20, 7:3-7.)  Thus, at the time of her termination in 2013, Plaintiff was not working toward certification.

Plaintiff argues that she possessed the "'basic skills necessary'" for the permanent substitute teacher position because she held the same position from 2009 through 2013, and prior to her termination, she was not advised that she was unqualified and she did not receive any complaints about her performance. (Pl.'s Br. at 7-8.) However, this argument misses the mark. The "basic skills necessary" for the permanent substitute teacher position include, at the very least, the certification required by New York State, and the District was not precluded from correcting Budhai's predecessor's error in hiring Plaintiff. (See Def.'s Reply Br., Docket Entry 62, at 3.)

Parenthetically, Plaintiff's citation to Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001) is wholly misplaced. In that case, the Second Circuit held that the plaintiff made the "minimal showing" necessary to plead qualification and noted that "[i]n a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified." Id. However, Gregory did not address claims by a plaintiff who did not possess the license or certification legally required for her position. Thus, the Gregory Court's reliance on the plaintiff's allegation that she had been employed by the defendant

for ten years and promoted into higher positions is of little relevance to the case at bar, where Plaintiff may have worked as a permanent substitute teacher for an extended period of time but undisputedly did not possess the proper certification.

Equally unavailing is Plaintiff's argument that after her termination, "Defendant invited her back to work as a per diem substitute, a position which required the same essential qualifications as the permanent substitute position." (Pl.'s Br. at 8.) As set forth above, New York State regulations provide that a substitute teacher who is not certified and is not working toward certification may render services for up to forty days per school year. 8 N.Y.C.R.R. § 80-5.4(c)(3)(i). Thus, the qualifications for a per diem substitute teacher working no more than forty days per school year are different than a substitute teacher working over forty days per school year.

Even putting aside Plaintiff's failure to demonstrate she was qualified for the position at the <u>prima facie</u> stage, Plaintiff's claim still fails based on causation. Assuming, <u>arguendo</u>, that Plaintiff stated a <u>prima facie</u> case, Defendant has set forth a legitimate, non-discriminatory reason for her termination--her lack of appropriate certification. <u>Cf.</u> <u>Boston v. Taconic Eastchester Mgmt. LLC</u>, No. 12-CV-4077, 2016 WL 5719751, at *5 (S.D.N.Y. Sept. 30, 2016) (noting that "the court may assume that a plaintiff has established a <u>prima facie</u> case and skip to

the final step in the analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action") (internal quotation marks and citation omitted).

However, Plaintiff has failed to establish pretext. While Plaintiff alleges that Crawford testified that "there has been a decrease in the African-American employee population since Mr. Zimbler became the principal," (Pl.'s Br. at 9), her assertion is a mischaracterization of Crawford's testimony. Crawford testified that the teachers at the Middle School were "predominantly white," (Crawford's Dep. Tr. 76:5-7), and stated, "[w]hen I was a teacher, I'm pretty sure there were more African-American teachers than there are now," (Crawford's Dep. Tr. 76:12-21.) Crawford was appointed interim Acting Assistant Principal when Hinson was acting Principal. (Crawford's Dep. Tr. 13:21-14:2.) Thus, Crawford's testimony indicates that any decrease in the number of African-American teachers at the Middle School began prior to Zimbler's tenure as Principal. Parenthetically, when asked whether she knew the "reasons for the African-American teachers moving or discharged," Crawford testified: "[t]he majority of them retired. Some might have taken positions as administrators in other districts. But, I don't know--that's it. I think they retired or they took another position, I think." (Crawford's Dep. Tr. 76:22-77:6.)

Plaintiff's remaining allegations regarding alleged discrimination based on race are equally unpersuasive. Plaintiff points to her testimony that Zimbler refused to acknowledge her in the hallways and notes the close timing of her meeting with Zimbler regarding student complaints and her termination. (Pl.'s Br. at 9, 12.) While Plaintiff testified that during that meeting Zimbler said, "I dealt with your kind of people," (Pl.'s Dep. Tr. 137:14-21), the Court declines to infer that this vague comment[7] and Zimbler's alleged refusal to converse with Plaintiff in the hallways evidences discriminatory animus. Moreover, Budhai terminated Plaintiff, not Zimbler, and Budhai testified that he did not provide Zimbler with advance notice of Plaintiff's termination. (Budhai's Dep. Tr. 85:5-22.)

Additionally, while Plaintiff alleges that she was subject to "differing terms and conditions of employment" insofar as she was the "only permanent substitute teacher to be evaluated" and Zimbler "continuously favored the students' words over Plaintiff,"[8] the Court disagrees. (Pl.'s Br. at 12.) Plaintiff

---

[7] While Plaintiff testified that she interpreted Zimbler's comment as race-based, Crawford and Vanterpool, who are both African-American, were also present at that meeting. Plaintiff testified that Zimbler did not include Crawford and Vanterpool as part of "your kind" as "[h]e just said it to me. He was looking at me and said it direct to me." (Pl.'s Dep. Tr. 77:11-79:9.)

[8] Plaintiff's brief states that "Mr. Budhai continuously favored the students' words over Plaintiff." (Pl.'s Br. at 12.) The

testified that Zimbler never gave her a performance evaluation, (Pl.'s Dep. Tr. 55:20-23), and the record does not contain evidence of any evaluation conducted while Zimbler was Principal.  Further, the fact that Zimbler gave credence to student complaints about Plaintiff's arguably racially charged comment directed toward Hispanic students does not support a discriminatory inference. Plaintiff disputed that she called the students "stupid and dumb" but did not dispute that she told the students "[w]hy don't you do like the other Hispanic kids and sit down and obey."  (Def.'s 56.1 Stmt. ¶¶ 59-60; Pl.'s Dep. Tr. 61:23-24.)

Finally, with respect to her ADEA claim, Plaintiff has failed to establish that age was the "but-for" cause of her termination.  Plaintiff alleges that causation is supported by: (1) her replacement by Ms. Capobianco, a Caucasian teacher in her twenties or thirties, after she was terminated in 2013, and (2) the fact that when she inquired about applying for the position of Teacher Assistant for In School Suspension ("ISS") in or about 2011 or 2012, Zimbler allegedly said "[a]ren't you too old to want to do this job."  (Pl.'s Br. at 12-13; Pl.'s Dep. Tr. 38:13-39:20; 136:9-16; see also Pl.'s Ex. I, Docket Entry 60-2 at 45-46

---

Court assumes this is a typographical error, as Plaintiff testified that Zimbler believed the students' allegations rather than her explanation, and the record does not indicate that Budhai and Plaintiff discussed or had a disagreement with respect to student complaints.

(Plaintiff's letter dated September 2, 2011, applying for the ISS position).)

However, "[w]hile sufficient to sustain [her] de minimus burden at the prima facie stage, the fact that Plaintiff was replaced by a younger worker is insufficient by itself to demonstrate that Defendants' non-discriminatory reason for terminating [her] was pretextual." Famoso v. Marshalls of MA, No. 12-CV-4863, 2015 WL 5793308, at *15 (E.D.N.Y. Sept. 30, 2015). Moreover, Plaintiff has not alleged that Ms. Capobianco also did not possess the requisite certification for the permanent substitute teacher position. Cf. Carmellino, 2006 WL 2583019, at *34 (holding that the defendant's hiring of a younger teacher for the position the plaintiff applied for did not raise triable issues of fact regarding the uncertified plaintiff's qualifications in the absence of evidence that the younger teacher also lacked certification). In any event, Zimbler's alleged stray comment regarding the ISS position, even when considered with Plaintiff's alleged replacement by the younger Ms. Capobianco, does not suffice to establish "but-for" causation. Cf. Brenner, 132 F. Supp. 3d at 419 (holding that the plaintiff did not demonstrate causation where his "additional evidence of discriminatory animus with respect to his ADEA claim boils down to one purportedly 'ageist' comment and a handful [of] ways in which plaintiff contends that [the principal] treated younger teachers preferentially").

Accordingly, Defendant's motion is GRANTED with respect to Plaintiff's Title VII and ADEA discrimination claims.

## II.   Title VII Retaliatory Discharge

Title VII retaliation claims are also analyzed pursuant to the McDonnell Douglas burden shifting framework addressed above. Setelius v. Nat'l Grid Elec. Servs. LLC, No. 11-CV-5528, 2014 WL 4773975, at *19 (E.D.N.Y. Sept. 24, 2014). To state a prima facie case for Title VII retaliation, the plaintiff must demonstrate: "(1) she engaged in [a] protected activity; (2) the employer was aware of this activity; (3) the employer suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." Id. (internal quotation marks and citation omitted). However, at the pretext stage, the plaintiff must demonstrate that "but for the protected activity, she would not have been terminated." Id. (citing Univ. of Texas SW. Med. Ctr. v. Nassar, --- U.S. ----, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013)).

Plaintiff argues that she "engaged in protected activity when she openly disclosed to Mr. Zimbler that he is favoring the student's [sic] over her and his opposition to Mr. Powell's administration." (Pl.'s Br. at 15.) The Court construes this argument as asserting that Plaintiff engaged in protected activity when she: (1) disputed the student complaints about her to Zimbler, and (2) openly supported Powell. (See also Pl.'s Br. at 16-17

("Plaintiff engaged in protected activity when during her meeting with Mr. Zimbler [she] opposed his decision regarding the students' remarks against Plaintiff").) However, neither of Plaintiff's alleged protected activities satisfy the first two elements of her prima facie case.

First, for a complaint to qualify as a protected activity, the plaintiff must possess a "good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks and citation omitted; alteration in original). Plaintiff does not allege that she complained about discrimination or otherwise opposed conduct prohibited by Title VII during the meeting with Zimbler, Crawford, and Venterpool regarding the student complaints. Rather, Plaintiff testified that she disputed the students' complaints and denied certain of their accusations. (See generally Pl.'s Dep. Tr. 56:3-64:2.)

Similarly, Plaintiff testified that the only way she supported Powell was by asking other teachers to provide "character letters" after Powell was terminated in connection with the sexual harassment complaints lodged against him. (Pl.'s Dep. Tr. 85:15-86:13, 87:5-8.) When asked why she supported Powell, Plaintiff testified that she felt the accusations against him were false, and the teacher and guidance counselor who made these false

28

allegations did so because they received poor evaluations and/or wanted to save their jobs. (Pl.'s Dep. Tr. 90:20-91:19.) Plaintiff has not proffered any evidence that her support for Powell was connected to any opposition to discrimination. In fact, as noted by Defendant, Plaintiff testified that she never made a complaint of discrimination prior to her termination.[9] (Pl.'s Dep. Tr. 139:20-23; Def.'s Reply Br. at 7.)

Second, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood that the plaintiff's opposition was directed at conduct prohibited by Title VII." Kelly, 716 F.3d at 15 (internal quotation marks and citation omitted). Plaintiff's dispute with Zimbler regarding student complaints and her frustration that Zimbler credited the students' allegations rather than Plaintiff's explanation could not have reasonably been understood as opposition to discrimination. Likewise, putting aside the question of Defendant's knowledge of Plaintiff's request for "character letters" from coworkers, Defendant could not have reasonably understood that Plaintiff was

---

[9] Parenthetically, Plaintiff also testified that prior to filing her complaint with the New York State Division of Human Rights, she complained to other teachers that she felt Zimbler was discriminating against her but she did not complain to "anyone who worked at central office" because she was trying to keep her job and was "afraid . . . [b]ecause of the way [Zimbler] used to treat [her]." (Pl.'s Dep. Tr. 140:12-20.)

opposing discrimination by asking her colleagues for these letters.

Accordingly, Defendant's motion is GRANTED with respect to Plaintiff's retaliation claim.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket Entry 49) is GRANTED. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    April __25__, 2017
          Central Islip, New York